**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS**

| | | |
|---|---|---|
| **ZEN-BIO, INC. and PETTER PIERACCINI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:23-cv-02475** |
| | ) | |
| **REGIONS BANK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANT'S
MOTION TO DISMISS; GRANTING IN PART PLAINTIFFS' MOTION TO AMEND**

Before the Court are two Motions, one filed by Plaintiffs, Zen-Bio, Inc. ("Zen-Bio") and Peter Pieraccini, and the other filed by Defendant Regions Bank ("Regions"). First is Regions' Motion to Dismiss Plaintiffs' first Complaint, filed on September 11, 2023. (ECF No. 9.) Second is Plaintiffs' Motion to Amend Complaint, filed in lieu of a Response to Regions' Motion to Dismiss on November 17, 2023. (ECF No. 20.) Regions filed their Response in opposition to Plaintiffs' Motion for Leave to Amend on December 1, 2023. (ECF No. 22.) Plaintiffs filed their Reply on February 9, 2024. (ECF No. 27.) For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED AS MOOT IN PART**, and Plaintiffs' Motion for Leave to Amend is **GRANTED IN PART**.

## I.     BACKGROUND

Peter Pieraccini is a Durham, North Carolina resident and the sole shareholder of Zen-Bio, a North Carolina corporation. (ECF No. 1-1, 6.) For the past twenty-seven years, Zen-Bio has had a commercial bank account ("the Account") with Regions, a bank incorporated in Alabama with

branches in Memphis, Tennessee, and Durham, North Carolina. (*Id.* at 6-7.) Pieraccini is the sole signatory on the account. (*Id.* at 7.) On June 13, 2023, Pieraccini discovered that he was unable to access the account. (*Id.*) He spoke with a Regions customer service representative and her supervisor to try to resolve this issue. (*Id.*)  However, neither employee was able to handle the matter. (*Id.*) Pieraccini then reached out to a local Regions bank branch in Durham, North Carolina to speak with a banker. (*Id.*) The banker informed him that there was a pending wire transfer from the Account in the amount of $298,500.00. (*Id.*) Pieraccini told the banker to cancel the transaction because it was fraudulent. (*Id.*) Despite telling Pieraccini that the transfer would be immediately cancelled, the banker did not take any further action. (*Id.*)

Prior to the alleged fraudulent wire transfer, the bank account's normal transactions involved two transfers a month in amounts between $6,000.00 and $11,000.00. (*Id.* at 8.) Regions had a practice of calling Pieraccini to confirm that he approved each of these wire transfers before they initiated them. (*Id.*) Despite this practice, Regions did not call him before initiating the fraudulent transfer. (*Id.*)

On June 13, 2023, a Regions employee circulated an internal email bearing the subject line "Account Takeover" which described five fraudulent transactions involving the Account. (*Id.* at 9.) The five attempted transactions totaled $1,737,550.00. (*Id.*)  The email conveys that one of the five transactions went through. (*Id.*) The email also indicates that the funds were transferred to an intermediary domestic bank, Truist, which is identified as a "mule." (*Id.*) The email states that "[t]he items were detected as suspicious as the IP address was out of the country and the phone number of the Admin Peter Pieraccini Had changed. This is an account takeover . . ." (*Id.* at 10.) On June 14, 2023, Colton Lee, the Regions Bank Vice-President in Memphis, called Pieraccini and relayed all pertinent information from the previously described internal email. (*Id.* at 8-9.)

After Regions stopped responding to Pieraccini, Plaintiffs' counsel sent Regions' counsel a letter threatening to bring suit, and spoke with them on the phone on June 30, 2023. (*Id.* at 10 & 21-23.) In response, Regions' counsel informed him that they were reviewing the matter and would issue a formal response upon completion. (*Id.* at 26.) To date, Pieraccini is still unable to access the bank account, and has not recovered the $298,500.00 that was fraudulently transferred. (*Id.* at 10.)

Plaintiffs filed their initial Complaint in state court on July 6, 2023. (ECF No. 1-1, 2.) Regions timely removed the case to this Court on August 4, 2023. (ECF No. 1.) Therein, Plaintiffs sought an injunction directing Regions to reinstate Plaintiffs' access to the account and to replace the $298,500.00 that was fraudulently transferred. (ECF No. 1-1, 11.) They requested declaratory judgment that Regions wrongfully denied Plaintiffs access to their bank account and wrongfully refused to replace the missing funds. (*Id.* at 12.) Plaintiffs also alleged claims sounding in (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the Uniform Commercial Code as adopted by Tennessee ("UCC"); (4) violation of the Tennessee Consumer Protection Act ("TCPA") T.C.A. § 47-18-104(a); and (5) negligence. (*Id.* at 12-15.) Plaintiffs seek $350,000.00 in compensatory damages, $500,000.00 in punitive damages, treble damages, attorney's fees, and all other expenses. (*Id.* at 16.) Regions Bank filed their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 11, 2023. (ECF No. 9.)

Plaintiffs filed their Motion to Amend pursuant to Federal Rule of Civil Procedure 15 on November 17, 2023. (ECF No. 20-2.) Therein, they allege (1) violations of T.C.A. §47-4A-202 and TCA §47-4A-203; (2) a violation of  T.C.A. §4A-105(a)(6); (3) a violation of the TCPA, T.C.A. § 47-18-104(a); (4) negligence for Regions' failure to report the fraudulent wire transfer to

the FBI's financial fraud kill chain; (5) negligence for Regions' failure to initiate a Society for Worldwide Interbank Financial Telecommunications ("SWIFT")-recall regarding the fraudulent wire transfer; and (6) breach of contract. Plaintiffs no longer request declaratory and injunctive relief, but otherwise seek the same damages sought in their initial Complaint. (*Id.* at 17-18.) On December 1, 2023, Regions filed its Response, arguing that Plaintiffs' proposed amendments are futile. (ECF No. 22.) Plaintiffs filed their Reply on February 9, 2024. (ECF No. 27)

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, although the complaint need not contain detailed facts, its factual assertions must be substantial enough to raise a right to relief above a speculative level. *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). However, "'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Determining whether a complaint states a plausible claim is "context-specific," requiring the Court to draw upon its experience and common sense. *Iqbal*, 556 U.S. at 679.

4

Defendants bear the burden of "proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008).

While the Court's decision to grant or deny a motion to dismiss "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [] also may be taken into account.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The Court may also consider "exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (citation omitted).

### B. Motion to Amend

In relevant part, Federal Rule of Civil Procedure 15 allows a party to amend a pleading once as a matter of course within 21 days after service. Fed. R. Civ. P. 15(a)(1)(A). After this first amendment as of right, a party must receive either the opposing party's written consent or leave of court to amend the pleading again. *Id.* 15(a)(2). Courts should grant leave to amend freely "when justice so requires," and the Sixth Circuit has previously listed factors to guide this determination:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). A proposed amendment is futile if it could not withstand a motion to dismiss. *Gooding v. EquityExperts.org, LLC*, No. 17-12489, 2020 WL

13441663, at *1 (E.D. Mich. Jan. 9, 2020) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Division*, 987 F.2d 376 (6th Cir. 1993)).

### III.    ANALYSIS

Broadly speaking, Plaintiffs allege causes of action under Article 4A of the Tennessee UCC, a violation of the TCPA, and common law contract and negligence claims across their initial Complaint and proposed Amended Complaint. (*See* ECF Nos. 1-1, 11-16 & 20-2, 10-17.) Regions argues that leave to amend should be denied because Plaintiffs' proposed amendments are futile. (ECF No. 22, 3.)  The Court confines its analysis to a review of the claims asserted in Plaintiffs' proposed Amended Complaint, and leave to amend will only be granted if the Amended Complaint can withstand the motion to dismiss.

### A.  Article 4A Claims

Regions argues that Plaintiffs' proposed amendments to their Article 4A claims arising under T.C.A. § 47-4A-202 and T.C.A. § 47-4A-203 are futile. (*Id.*) Section 47-4A-202 reads in pertinent part:

(a) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.

(b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if:

    (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and

    (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

T.C.A. § 47-4A-202. Section 47-4A-203 sets forth the conditions in which a bank may not enforce a verified payment order. As relevant here, a receiving bank cannot enforce or retain payment if a

customer proves the order was directly or indirectly caused by a person entrusted with duties to act for the receiving bank or who obtained access to the account from a source controlled by the bank. T.C.A. § 47-4A-203.

Plaintiffs contend that by processing the fraudulent wire transfer without receiving authorization from Pieraccini, Regions either failed to comply with its security procedures, or failed to have any such procedures under TCA§ 47-4A-202. (ECF No. 20-2, 10-11.) Regions maintains that leave to amend to include this argument would be futile for two reasons. First, they argue that Plaintiffs do not raise a challenge to the commercial reasonableness of their security procedures, and only allege that Regions failed to comply with those procedures in this instance. (ECF No. 22, 4.) Second, they aver that Plaintiffs' argument that they failed to adhere to their security procedures is unavailing because Regions did in fact comply with its procedures. (*Id.*) Regions indicates that the relevant security procedures involve authorization via telephonic confirmation. (*Id.* at 4-5.) They point out that the phone number associated with the account was changed prior to the fraudulent transfer. (*Id.*) Regions argues that this is significant because changing the associated phone number requires access to the account, and the obligation to safeguard account access belongs to Plaintiffs under T.C.A. § 47-4A-203 and the Master Agreement. (*Id.* at 5.)

The Court finds that Regions' Article 4A arguments are not well taken at this stage of the litigation because they rely on documents and factual assertions that are outside the scope of a Rule 12(b)(6) analysis. Regions' claims related to the existence of—and their adherence to— commercially reasonably security procedures present factual issues that the Court cannot rule on in the absence of a developed factual record. For instance, Regions contends that they adhered to their procedures because the phone number associated with the account changed. In so doing,

Regions is raising multiple factual claims that contradict the facts Plaintiffs allege in their initial and Amended Complaint. First, it appears that Regions is alleging that the person responsible for the fraudulent transfer gained access to the Zen-Bio account through some security lapse within Plaintiffs' control. (*Id.* at 5.) Indeed, they must be asserting this because the wire transfer would otherwise be unenforceable. *See* T.C.A. § 47-4A-203. The Court cannot make this determination based on the record before it. Regions' refers to some provision from the "Master Agreement" as an alternative basis in support of their risk allocation argument, but the agreement has not been presented to the Court. (ECF No. 22, 5.) Second, given that Regions indicates that they did in fact adhere to their telephonic authorization procedure, they are impliedly asserting that they called the number associated with the fraudulent transferor before initiating the transaction. (*See id.* at 4-5.) However, this allegation is never explicitly mentioned in either Parties' filings.

To reiterate, when reviewing a motion for leave to amend that is opposed on futility grounds, the Court is to accept all of a plaintiff's factual allegations as true and then consider whether they have stated a claim to relief that is plausible on its face. *See EquityExperts.org, LLC*, No. 17-12489, 2020 WL 13441663, at *1; *Iqbal*, 556 U.S. at 678. Assuming Plaintiffs' factual allegations are true, the Court finds that their amended claims under Article 4A are not futile. Hence, the Court **GRANTS** Plaintiffs leave to amend with respect to the Article 4A claims.

### B. Preemption

Regions argues that leave to amend should be denied as to Plaintiffs' TCPA and common law claims because they are preempted by Article 4A. (ECF No. 22, 7-9.) Regions cites to numerous cases, including one from the Sixth Circuit and another from the Eastern District of Tennessee in support. (*Id.* at 8.) The Court has reviewed the referenced authorities and finds that there is a consensus among federal courts that Article 4A displaces, or preempts, common law

claims. *See, e.g., Wright v. Citizen's Bank of E. Tennessee*, 640 F. App'x 401, 407 (6th Cir. 2016) (finding that the Article 4A preempts common law claims) (collecting cases).

What effect the foregoing has on Plaintiffs' TCPA claim is unclear given that this is not a common law claim. However, these authorities unambiguously indicate that negligence and contract claims, like those Plaintiffs assert here, are preempted. *See Citizen's Bank of E. Tennessee*, 640 F. App'x at 407. Plaintiffs contend that their common law claims are not preempted by 4A because "Article 4A does not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were obtained illegally." (ECF No. 27, 4 (quoting *Regions Bank v. Provident Bank*, 345 F.3d 1267, 1279 (11 Cir. 2003)).) It is not readily apparent how the cited Eleventh Circuit case bears on the Court's disposition in this case. That case was brought by a transferor bank against a transferee bank for accepting a wire transfer despite knowing that it was fraudulent. *Id.* at 1279. The issue there was whether Article 4A preempted the transferor bank's disgorgement claim. *Id.* at 1276. Hence, the Eleventh Circuit's holding stands for the limited proposition that a *transferee* bank can be held liable under common law claims where it knowingly received illegally obtained funds. *Id.* at 1279. Because this limited exception to the preemption rule involves a set of facts that is completely different from those of the instant case, the Court finds little reason to engage with the Eleventh Circuit's holding here.

Consistent with the above, the Court finds that Article 4A preempts Plaintiffs' negligence and breach of contract claims but does not preempt their TCPA claim. Accordingly, Plaintiffs' negligence and breach of contract claims are **DISMISSED**, and leave to amend them is **DENIED** as futile.

### C.  TCPA

Preempted or not, the Court finds that Plaintiffs' TCPA claim must still be dismissed because it was not pleaded with particularity.

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). To state a claim under the TCPA, Plaintiff must allege "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated.'" *Creative Lifting Servs., Inc. v. Steam Logistics, LLC*, No. 1:20-CV-337, 2022 WL 136727, at *2 (E.D. Tenn. Jan. 13, 2022) (citation omitted). Section 47-18-104(b) sets out 52 acts that are declared to be unlawful and in violation of the statute. T.C.A. § 47-18-104(b). Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply to allegations of unfair and deceptive acts under the TCPA. *See Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (citing *Harvey v. Ford Motor Credit Co*., 8 S.W.3d 274, 275 (Tenn.Ct.App.1999)). "To satisfy this requirement a complaint must set forth specific fraudulent or deceptive acts rather than general allegations." *Agfa Photo United States Corp. v. Parham*, No. 1:06-cv-216, 2007 WL 1655891, 2007 U.S. Dist. LEXIS 40980 (E.D. Tenn. June 5, 2007) (citing *Humphries v. West End Terrace, Inc*., 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990)).

Regions argues that Plaintiffs fail to meet the heightened pleading requirements for fraud claims. (ECF No. 22, 12.) The Court agrees. In their proposed Amended Complaint, Plaintiffs state that "Defendant engaged in unfair, deceptive, or abusive practices as specifically set forth herein." (ECF No. 20-2, 12.)  Plaintiffs then state that Regions locked them out of their account and refuse to return the fraudulently transferred funds without a good reason or cause. (*Id.*) Plaintiffs do not

identify any one of the 52 acts as present here, and the Court is not aware of one. Moreover, Plaintiffs conclusory allegation that Regions violated the TCPA does not satisfy the plausibility pleading standard that ordinary claims are held to, much less meet the heightened pleading standard for fraud claims. The Court therefore **DISMISSES** Plaintiffs' TCPA claim and **DENIES** leave to amend it.

### D.  Remaining Claims

The Court next addresses two remaining claims in the proposed Amended Complaint. First is Plaintiffs' newly asserted good faith claim. Plaintiffs allege that Regions violated T.C.A. §4A-105(a)(6). (ECF No. 20-2, 11.) That section reads, "'[g]ood faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing . . ." T.C.A. §4A-105(a)(6). This section of Article 4A provides definitions for terms that appear in statutes within the Article; nothing in the section confers a substantive right. A term's definition does not equate to a cause of action. Accordingly, the Court **DENIES** Plaintiffs' motion for leave to amend to add their T.C.A. §4A-105(a)(6) claim.

Last, Plaintiffs continue to seek punitive damages and attorney's fees for Regions' knowing and willful acts of locking customers out of their accounts and refusing to replace funds misplaced because of fraudulent transactions. (ECF No. 20-2, 17.) Regions argues that these claims should be dismissed in the initial complaint and Plaintiffs should be denied leave to amend them. (ECF No. 22, 13.) In support, Regions contends that Plaintiffs waived their right to seek this relief in its deposit agreement, and that such relief should also be denied because all of Plaintiffs' substantive claims should be dismissed. (*Id.* at 14-15.) Because this agreement is not before the Court, and some of Plaintiffs' substantive claims remain, the Court finds that neither claim should be **DENIED**, and **GRANTS** leave to amend both remedial claims.

## IV.    CONCLUSION

Consistent with the foregoing, the Court **GRANTS IN PART** and **DENIES AS MOOT** Regions' Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6), and **GRANTS IN PART** Plaintiffs' Motion for Leave to Amend. Plaintiffs shall file an Amended Complaint containing its Article 4A and damages claims within seven days of this Order's entry.

**IT IS SO ORDERED,** this 11th day of March, 2024.

_s/John T. Fowlkes, Jr._
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE